Jackson, J.
The instrument offered for probate, as the will of Mary While, was executed by her in the lifetime of her husband, John White ; and, although she survived him about two years, she never republished the will after his death.
If the case stopped here, it would be very clear that the instrument could not be approved and allowed as her will.
It was said in the argument, that every married woman might, by our law, devise her lands, as if sole, provided her husband assented to it; the counsel for the appellant contending that married women were included in the description of persons, who, by our statute of wills, [1783, c. 24,] *are capable of devising real [*530 ] estate, and that the English cases to the contrary did "not apply here, because they are founded on the statute of 34 & 35 Hen. 8, c. 5, which expressly prohibits such devises by married women.
The English statute of wills [32 Hen. 8, c. 1] authorizes every person having lands, fyc., to devise them ; and it seems to have been the better opinion, on the construction of that statute, that a married woman could not make a will of lands.(1) But as “ divers doubts, *460 questions, and ambiguities ” had arisen, or were apprehended on ¿h&t and other points, the statute of 34 & 35 Hen. 8, c. 5, was made to remove them ; and this last statute, § 14, contains the express prohibition, before mentioned, as to married women.
Our statute provides, that persons of full age and of sane mind may dispose of their real estates, “ as well by, last will and testament in writing, as otherwise by any act executed in his or her lifetime.” This is almost precisely the language of the statute of 32 Hen. 8, and it was not the design, in either case, to alter the relation between husband and wife, or the legal effects of that relation, but only to provide that every individual, who could, by his own act, lawfully aliene his estate, whilst living, might devise it at his death.
It is no answer, to say that a man and his wife might in England convey her land by fine, and in this State by their joint deed. Such a conveyance is not her act; it is the joint act of both. And even the express assent of the husband to her will, however expressed, would not make it operate as their joint deed, within the law and usage of Massachusetts, no more than if he had joined her in a paro conveyance of her land. It may be further observed, if necessary, in support of this uniform construction and understanding of our law, that married women are not strictly within the letter of the statute. The power of devising is given to “ every person lawfully seized of any lands, &c., in his or her own right.” But a married woman is not so seized. She and her husband are jointly seized in her right.
The circumstance of surviving her husband does no* [*531] render * valid the will of a married woman, unless she re publishes it after his death.(2)
We are then to consider, whether the will is rendered valid or ef fectual, to any purpose, by the three indentures to which the said Mary White and her husband were parties. She undertakes, by this will, not only to dispose of the real estate mentioned in the second indenture, as to which she had a power of appointment by that indenture, but also to devise and bequeath all the residue of her estate, both real and personal. If, therefore, she was under a legal incapacity to make a will as to either of those particulars, it cannot be approved and allowed in the common form. By our laws, the probate of a will is conclusive as to real as well as personal estate ; and if this should be approved and allowed in the probate court, it could not afterwards be questioned whether Mary White was legally capable of devising the land in Charlestown.
It is clear that she was not, in any view of the case, capable of devising that land in the lifetime of her husband. We may understand this to be land which came to her by inheritance or purchase *461 after the marriage. If it did not, there is no one of the indentures, which affects it in any manner. If she acquired the land after the marriage, it will come within the provisions of the third indenture, made in 1770. But that indenture does not even profess to give her authority to dispose of such land by will in the lifetime of her husband. She is thereby authorized to dispose in that manner of any personal estate so acquired, and of the rents and profits of the real estate ; and the husband relinquishes his right, as tenant by the courtesy, to the real estate ; but there is no intimation that she may dispose of the latter by will. This power seems to have been cautiously omitted in the indenture of 1770 ; probably because the conveyancer understood that it would, at best, be wholly useless.
The heir of a married woman cannot be disinherited, but by some legal conveyance made by her. In England, this * may be by a fine ; in this State, by a deed duly executed [*5321 by her with her husband.† When, therefore, a married woman wishes to have power to devise her land, she must convey away the whole legal estate, so as to bar and exclude the heir ; and reserve to herself the power, by will, or any instrument in nature of a will, to appoint the persons, to whose use it shall be held, or to require the trustee to convey it to such persons as she shall appoint The appointee or devisee, in such a case, takes not under the will, but under the deed ; and, if the deed is so executed as to take the estate from the heir, it is unimportant to him, whether the person who takes it from him by force of the deed, is designated by the ancestor, or by any other person ; whether the future owner is named in the deed of conveyance, or ascertained by any contingent event thereafter.
The assent of the husband, therefore, even if he had given his assent, to a devise made by his wife of lands holden by her, would not make the will effectual against her heir. Upon a bequest by her of money or other chattels, his assent alone will make it valid ; because he alone is interested to question her authority. The gift, if it is effectual, is his gift ; and the property passes from him.(3) But her real estate, if not lawfully conveyed, goes to her heir ; and how can the assent of the husband, who, to this purpose, is a stranger to the heir, cause that to be a lawful conveyance of her estate, which, by the general rules of law, is not so ? It might as well be supposed that the husband could, by his own act or agreement, authorize any person, whom his wife should appoint by writing without seal, or by a verbal order, to hold and enjoy her land, against the title of her heir. *462 These opinions, which are founded in reason and the well settled principles of law, are confirmed by the case of Peacock vs. Monk.(4) This was not, indeed, the point on which that cause turned ; but tho opinions there advanced by Lord Hardwicke are considered as settled law by Powell [on Devises, 164, et seq.], who cites no case in which they have ever been denied or doubted.
[ * 533 ] * It was said, however, by the counsel for the appellant, that, as to property secured to the wife, or held by her, to her separate use, she might devise it as if a feme sole. This may be true in England, as to personal estate so held by the wife ; but it has been otherwise decided as to real estate, in a case cited in that of Peacock vs. Monk.† But it is not important to consider, whether the same principle applies in this State ; because the facts in this case do not present the question. .It does not appear that the land in Charlestown was conveyed to her with any peculiar limitation of the uses, or that it was in any manner secured by her grantor to her separate use during the coverture. We must understand that it descended or was conveyed to her in the common manner. If so, the subsequent agreement of her husband, by the indenture of 1770, that she should hold it to her separate use, would certainly have no *463 more effect on her will for devising the land, than his express assent to such will ; which we have already seen to be insufficient.†
It is, then, apparent that this instrument cannot be approved in the common form, as the will of Mary White; and we are next to consider, whether it can be allowed as a testament of her personal estate, or as an appointment as to the real estate mentioned in the second indenture.
The authority of our probate courts, to approve and allow the will óf a married woman, in some cases, as a testamentary paper, ought not, perhaps, to be questioned. Our laws recognize and protect the rights of married women to property given or secured to their separate use. These rights sometimes include the power of disposing of such property by will, or instrument in nature of a will ; and," if a special and qualified probate be necessary to give validity to such an instrument, there seems to be no reason why the instrument should not be allowed in the probate courts, for that purpose and to that effect. Such a probate is necessary in England, when the power of disposal or appointment by the married woman is to be exercised by an instrument in nature of a will, and when it operates on personal estate.(5) With us there is no difference, in this respect, between real * and personal estate; and such [*534] a probate seems equally necessary in both cases ; as otherwise questions exclusively of probate jurisdiction might be settled by a jury, and by courts of common law.
Taking it, then, for granted that such special or qualified probate may be had in our Courts, there are still sundry objections to the allowance of it in this case. There is one, which applies with great force, both as it respects the personal estate, and that part of the real estate which is mentioned in the second indenture. It is, that, by allowing the will as to these two items, whilst it is wholly ineffect *464 ual as to the real estate in Charlestown, we should almost certainly defeat the design of the testatrix. This reason is assigned in our statute of wills, § 9 ; for the provision there made, that a will, purporting to dispose of both real and personal estate, but not so executed as to pass the former, shall not be allowed as a testament of persona] estate only. The principle, thus recognized and sanctioned by our legislature, is certainly founded in reason and justice ; and it applies with equal force to every case, where a supposed will is originally defective and ineffectual as to any material part. In distributing orie’s estate, especially if among children, each devise and bequest is, in some' measure, the condition of every other. In the present case, for example, we must suppose, that the testatrix would not have given the land in Boston to her daughter, if she had not given the land in Charlestown to her son. If the daughter can hold one of these estates by the will, and a moiety of the other by descent, it will defeat the express intention of the deceased. It ought here to be observed, that this was not the object of the appellant in this case. On the contrary, if the will had been approved and allowed according to his desire, it would have been effectual in the whole ; and each party would have held all that their mother intended to give them. >
There is another objection, which applies to the personal estate alone. At the time of making the will, Mary White was not the owner of any personal estate. She had a right to dispose [*535] of some part of her husband’s estate, in case she * died before him ; and he was bound to pay over and deliver it in that event, to her appointee. This will was executed for the purpose of making that appointment. But, in the events which have happened, the will does not dispose of any thing out of his estate. It appeared in evidence, and was not denied, that she received from her husband’s estate, after his death, all that she was entitled to by force of those indentures.
The will, when made, must have had reference to her power, as contained in those indentures, to dispose of so much out of her husband’s estate, in case he survived her ; and it may be considered in the same light, as if she had recited the power, and then had ordered that, in that event, it should be paid to her son and daughter. That event has not happened. On the contrary, she has herself made another disposition of that property. This instrument, being in nature of a will, .could not operate until her death ; she might revoke it at any time ; and she has virtually revoked it, by receiving to her own use what she had ordered to be paid to her children. It may be compared to a bequest of a specific debt, which the testator afterwards receives in *465 his lifetime ; or to a bequest of a specific chattel, the form of which has been entirely altered.(6)
Among the innumerable cases, in which powers of this kind are reserved to married women in England, there must, without doubt, have been many, in which the wife, after making her will, survived her husband ; yet we have not found any case, where such an instru ■ ment has been allowed and approved as her will, upon her surviving her husband. We can have no assurance that the testatrix would have made this disposition, if she had undertaken, after her husband’s death, to devise and bequeath all the estate then in her possession. If it be supposed that her leaving the will uncancelled, for two years after her husband’s death, is evidence that she was satisfied with it, the answer is, that this circumstance has always been deemed insufficient ; and that the testatrix must, in such a case, republish the will, as we have before observed. In so far as this instrument could have been considered as a will, when first executed, it was * the power granted to the testatrix by her husband which [ * 536 ] made it so. But that power ceased before the supposed will was perfected by the death of the testatrix. At the time of her death, the instrument derived no additional force or authenticity from any thing that her husband had previously done. He had no longer any control of her acts. All that he ever did, or agreed to do, in this respect, was with reference, express as well as implied, to his surviving her. As she survived him, the will remains as if he had never made any covenant or agreement respecting it. It cannot be, in any manner or for any purpose, allowed and approved in the Probate Court.
It may be proper to observe, that, by virtue of the power reserved to Mary White, in the second indenture, the appointment, as to the real estate therein mentioned, might have been made by any instrument under her seal. The instrument now produced is under her seal, and so coznes within the letter of the power. Whether it is a valid and effectual execution of the power reserved in that indenture, as an instrument under seal, although not a will, is not now a question before us. That can only be tried by an action at comznon law, if the parties think it expedient to bring such an action. We cannot, however, avoid remarking, that the instrument, considered in that light, would be exposed to many of the objections, which have been already suggested against it as a will ; and we do not feel ourselves authorized to give it any additional weight or authenticity,' by approving it as a testamentary paper or as a will.
The decree is affirmed, but without costs for the respondent. The statute(7) gives this Court a discretionaiy power as to costs iz *466 these cases ; and, as none are ever allowed before the judges of probate, we do not generally award any, unless when the appeal is on frivolous pretences, or for reasons which the appellant knew, or ought to have known, to be unfounded. This case presented important questions of law, upon which the parties might not unreasonably differ, and upon which either of them might justly claim the opinion of the Supreme Court of Probate.

 1 Powell on Dev. 140. — Dyer, 354.

 Piowd. 343. —11 Mod. Rep. 123. — Swinb. 88. — Godolph. Orphan's Legacy, 29

 In Massachusetts a feme covert may convey her estate by deed, joining with het husband, as fully as the same could be conveyed in England, by a fine and recovery Durant vs. Richie, 4 Mason, 45.

 1 Mod. 211.

 1 Ves. 190.

 It is now clearly settled, that a Court of Equity will carry into effect marriage articles, and compel the person seized of the legal estate, to convey it according to the articles. Wright vs. Englefield, Amb. 468.— Wright vs Cadogan, 2 Ed. 239. — S. C. affirmed in Dom. Proc. Br. P. C. 486 —Ed. Tomb., where Lord Hardwiche’s opinion in Peacock vs. Monk, 2 Ves., Sen., 192, was urged against the interference of the Court. In Wright vs. Cadogan, the legal estate was in trustees, but the principle is the same, where the legal estate is in the wife. Thus, in Rippon vs. Dowding, Amb. 565, the husband having given a bond to his intended wife, with a condition to empower her to disppse of her real estate by deed or will, and she having made a will, Lord Camden compelled the heir to execute a conveyance to the devisees. Since this time, courts of equity have been in the constant habit of carrying into effect dispositions by femes covert, in the nature of appointments under marriage articles, both against their husbands and their heirs : and it is no objection, in such a case, that the devisees of the wife are strangers, in favor of whom equity would not have supplied the defective execution of a power; nor is it material, as between the parties themselves, whether the articles were made before or after marriage, with this qualification, that the heir cannot be affected by the contracts of the wife during the coverture. In the late case of Worrall vs. Jacob, 3 Meriv. 256, post-nuptial articles were decreed to be carried into execution under these circumstances. A man on separating from his wife, entered into a covenant with a third person, to release to trustees a reversionary estate m fee in some property, to such uses as the wife, by deed or will, should appoint; in consideration of which, the covenantor agreed to indemnify the husband against the flebts of the wife. The wife made a will, and the Court, at the suit of the devisee, lecreed the execution of the husband’s covenants, and that the trustee’s covenant to ^indemnify the husband against the debts of the wife, was a valuable consideration to support the deed against creditors. The husband having become bankrupt, his assignees were decreed to join. It seems that a feme covert does not forfeit her interest under articles by adultery, as she does her right to dower at common law, by 13 Ed. 1, c. 34. — Seagreave vs Seagreave, 13 Ves. 439. — See further as to wills in the nature of appointments by feme coverts, Grisby vs. Cox, 1 Ves., Sen., 5J7. — Duke of Marlborough vs. Lord Godolphin, 2 Ves., Sen., 75. —Henly vs. Phillips, 2 Atk 48. — Ross vs Ewer, 3 Atk. 160.— Sockett vs. Wray, 4 Br. C. C. 483. -• Compton vs. Collinson, 1 H *463 Bl. 334. — Fettiplace vs. Georges, 1 Ves, Jr,, 46; 3 Br. Ch. C. 8. — Goodill vs. Brigham, 1 Bos. & Pul. 198. Ana cases there referred to. — Hodgden vs. Staple, 2 D. & E. 684. — Reid vs. Shergold, 10 Ves. 370. — Parkes vs. White, 11 Ves. 209. — Driver vs. Thomson, 4 Taunt. 294. — Lee vs. Moggeridge, 1 Ves. & Bea. 118. — Dillon vs. Grace, 2 Sch. & Lef. 456.
A husband may be a trustee for a wife, not only as to benefits proceeding from third persons, and intended for her separate use, Parker vs. Brooke, 9 Ves. 585, but also with respect to property which was once his own, but of which he has, by a clear and distinct act, divested himself, and engaged to hold it as a trustee for bis wife. McLean vs. Longlands, 5 Ves. 79. — Walter vs. Hodge, 2 Swanst. 104. So where an estate was devised to the separate use of a feme covert without the intervention of trustees, it has been held, that the husband should be a trustee for his wife. Bennett vs. Daviee, 2 P. W. 316. —2 Ves. 665.

[† A married woman may, by her last will and testament, dispose ot any property, held in her own right, and separate from that of her husband ; “ Provided, that the rights and interests of the husband to and in any such property, shall in no way be affected thereby; ” and provided that the husband’s assent to the will be expressed in writing indorsed thereon. Supplement to Mass. Rev. Stat. 1842, c. 74. — Ed.]

 1 Burr. 431. —3 Atk. 156.

 Toller’s L. of Ex’rs. 259, 260.

 Stat. 1783, c. 47.