## The Presideni &c. of NEWBURYPORT BANK *versus* RICHARD STONE.

A contract entered into between a man and a woman and a trustee, in contemplation of marriage, in which the man covenanted that the woman might, during the coverture, make a testamentary disposition of any sum of money or personal effects, not exceeding a certain amount, being less than he afterwards received by the marriage, and that he would pay over to her executor in six months after her death the amount so bequeathed, was held to be a valid contract as against creditors of the husband.

A testamentary paper executed by the woman after the marriage, by which she bequeathed "all my estate, real and personal, meaning all the estate and property reserved and secured to me at my own disposal by certain articles of agreement" &c., (referring to the marriage contract,) was *held* to be a valid appointment under the marriage contract, it being manifest that the intent was to dispose of all the personal estate of which the power of disposal was reserved to the wife, and therefore the use of the term "real estate," supposing it to be inoperative and void, because there was no real estate upon which it could take effect, did not vitiate the appointment so far as it was well made pursuant to the power.

A payment to the executor by the husband, before the expiration of six months from the death of the wife, was *held* to be valid as against creditors of the husband whose demands were due before such payment.

A conveyance of land to the executor by the husband, at its fair value, was *held* to be equivalent to a payment of the same amount in money.

WRIT of entry to recover certain land situate in Newburyport and Newbury. The demandants count upon their own seisin and a disseisin by the tenant ; who pleads that he did not disseise them. The cause was tried before *Shaw* C. J.

The demandants claimed title in virtue of a judgment, execution, and levy on the land as the property of Jonathan Gage. The tenant claimed title under a prior conveyance from Gage.

The tenant gave in evidence a deed to himself from Gage, dated August 2, 1830, embracing the land in question. The demandants objected that it was not made upon a good and adequate consideration, and was not valid as against creditors.

It was proved on the part of the tenant, that on May 15, 1798, prior to the marriage of Gage with his late wife, then Mary Perkins, an indenture was entered into between Gage and Mary Perkins and Nicholas Johnson, as trustee, in which, after a recital that a marriage was contemplated and that Mary, in her own right, had money and other property to the amount of upwards of 8000 dollars, which would become the prop-

erty of Gage upon the marriage, Gage covenanted with her and with Johnson, that Mary might, during the marriage, make an instrument in the nature of a testament, and might therein bequeath any sum of money or personal effects, not exceeding in the whole the value of 8000 dollars, and that he would pay over to her executor, in six months after her death, such sum as she should appoint, not exceeding 8000 dollars.

The marriage took place and the wife made an instrument, duly executed, purporting to be her last will and testament, and therein bequeathed to the tenant and his heirs, all " my estate, real and personal &c., meaning and intending particularly to include herein all the estate and property reserved and secured to me, at my own disposal, by certain articles of agreement " &c., (referring to the indenture above mentioned,) and she appointed the tenant sole executor of the will. This instrument was duly proved and allowed in the probate court.

The deed first above mentioned was given in part satisfaction and discharge of the money supposed to be due from Gage to the tenant by virtue of the marriage settlement and will; and the land thereby conveyed was estimated and appraised at its just value. At the time of the negotiation between the parties, upon which the land was so conveyed, it was considered by them doubtful, whether, after the payment of the 8000 dollars, Gage had sufficient property left to pay all his other debts; and some other property was conveyed by Gage to the tenant, at or about the same time, to satisfy or secure other existing demands. At the time of the conveyance in controversy, six months had not fully elapsed from the death of Mary Gage. The debt upon which the demandants recovered their judgment and execution, was a subsisting demand at the time of the conveyance by Jonathan Gage to the tenant.

The demandants contended, that the marriage contract and will did not create a debt, the payment and discharge of which would constitute a good and adequate consideration for the conveyance to the tenant, so as to render it valid as against creditors ; —

1. Because such a settlement had a tendency to give the husband a false credit, and so was a fraud upon creditors.

2. Because the will did not pursue the power, inasmuch as the will purports to convey all the real estate of the wife which was not authorized, and by law could not be warranted, by the marriage settlement, and, being not in pursuance of the power, was void.

3. Because the payment was made before the six months from the death of the wife had elapsed, which was not in conformity to the settlement and will.

4. Because the amount was to be paid in money, and not in land.

A verdict was taken for the defendant by consent, subject to the opinion of the whole Court upon the questions of law arising in the case.

*Nov. 10th.*    *Moseley* and *Le Breton*, for the demandants, cited in support of the second objection to the conveyance to the tenant, *Osgood* v. *Breed*, 12 Mass. R. 525 ; Com. Dig. *Poiar*, *C* 6 ; and in support of the third, *Northampton Bank* v. *Whiting*, 12 Mass. R. 110 ; *Singleton* v. *Butler*, 2 Bos. & Pul. 283 ; *Ogden* v. *Jackson*, 1 Johns. R. 370 ; *Locke* v. *Winning*, 3 Mass. R. 325.

*Cushing*, *contrà*, cited in support of the marriage settlement, *Hildreth* v. *Eliot*, 8 Pick. 297 ; *Richardson* v. *Learned*, 10 Pick. 261 ; *Carnes* v. *Smith*, 2 Desauss. 300 ; *Dallam* v *Wampole*, 1 Peters's C. C. R. 116 ; *Hastings* v. *Dickinson*, 7 Mass. R. 153 ; and as to the second objection, *Methodist Episc. Church* v. *Jaques*, 1 Johns. Ch. R. 450, 3 Johns. Ch. R. 77, and 17 Johns. R. 548 ; Clancy on Husband and Wife, 308.

*April term,*
*1833.*    SHAW C. J. drew up the opinion of the Court.    Both parties claim the land in controversy, under titles derived from Jonathan Gage ; the tenant, under a conveyance prior in time, the demandants, under the levy of an execution subsequent in time, but which they contend to be prior in right, on the ground, that the previous conveyance to the tenant was made without adequate consideration, and so, as against the creditors of the grantor, was fraudulent and void.

The first question is, whether the marriage contract made between Jonathan Gage and his intended wife, with a third person as trustee, is a valid contract, as against the creditors of the husband.  Such a contract, in consideration of marriage, made in good faith, by which a portion of the husband's property has been conveyed or covenanted to be paid to a trustee for the use of the wife, has been always considered good and valid in law, not only against the grantor and his heirs, and other volunteers, but as against creditors, and *à fortiori* shall a settlement be deemed good, when the husband merely stipulates that he will repay to the wife or to her appointee, the principal sum, which he receives with her at his marriage, he having the whole use and benefit of it in the mean time.  The only objection made to it is, not that it is not made upon a legal and valuable consideration, but that it may have a tendency to give the husband a false credit.  But this argument, applicable to another and very different species of transaction, can have no avail. Every person who obtains the possession and use of money and other personal property, upon a contract to restore it or pay for it, at a future time, certainly or upon a contingency, does, in a certain sense, or may obtain a credit, which he would not otherwise enjoy, in consequence of it, but it cannot be contended upon this ground, that such a contract is fraudulent or void as against creditors.

The Court are also of opinion, that the will of Mary Gage, being made with the assent of the husband, and in pursuance of an express provision in the marriage settlement, was a good and valid appointment, under that settlement.  A married woman, with the assent of her husband, may make a will, by way of appointment, of the personal property at her disposal ; and such appointment being in its nature and character a testamentary document, it shall be so far respected and treated as such, as to be admitted to proof in the ordinary courts of probate.  *Osgood* v. *Breed*, 12 Mass. R. 525.

It is objected that she exceeded her power, in making a disposition of real as well as personal property, when the power was to dispose of personal property only.  We think there is no weight in this objection.  The will makes a direct reference

to the articles, and the manifest intent is, to dispose of the property, of which the power of disposal was reserved to her, by the marriage settlement. Besides, here is a clear and distinct intent manifested, to dispose of all the personal estate, of which the power of disposal was reserved to her, and therefore the use of the term "real estate," supposing it to be inoperative and void, because there was no real estate on which it could operate, will not vitiate and avoid the appointment and disposal which is well made pursuant to the power.

These points being settled, it follows, that at the time o the conveyance by Gage to the tenant, there was a debt actually due from the former to the latter, and that the land was conveyed, at an agreed price, conceded to be the fair value of the property, in satisfaction of that debt.

Two exceptions are taken to the regularity and validity of this conveyance on this consideration, one, that by the terms of the marriage settlement and of the will, the amount was to be paid in money only, and could not be paid in the land ; the other, that it was not payable till six months after the death of the wife, and that the land in controversy was conveyed within the six months.

Neither of these objections, we think, can affect the validity of this conveyance. Money is the general measure of the values of commodities, and the acceptance of property at an agreed valuation in money, as and for money, is equivalent to a payment in coin, This may be simplified and illustrated by reducing the real agreement of the parties to its elements. In effect the creditor stipulates to purchase the property at an agreed price, and the debtor agrees to apply the proceeds in discharge of his debt, all of which is accomplished by a conveyance of the property by the debtor and a discharge of the debt in whole or *pro tanto* by the creditor. It would in no degree change the character of the transaction, if a sum of money were actually paid over by the one, and immediately repaid by the other. *Howe* v. *Mackay*, 5 Pick. 44.

The other objection resolves itself into this, whether if there be an actually existing debt, though not due, a debtor may in good faith, as against creditors, whose debts are due, appropriate a portion of his property to pay it. Two classes

of cases, almost too familiar to require a citation of authorities, seem to settle this question.

It has often been held in this commonwealth, that a debtor in failing circumstances owing a note not due, might in lieu of such note, give one payable on demand, and that an attachment made on the latter note, if prior in time, would hold the property of the debtor against the attachment of a creditor if made subsequently, although the debt of the latter had been much longer due. If an action will lie, and an attachment can be made on a note payable on demand thus given, it is because in legal contemplation the debtor is in default for not having paid it. But if he could give a binding contract so to pay and is held to be in default, for not having complied with such contract, it must be true, that if he had had the means he might have paid it in cash, or in other property, at its full and fair value, and of course that such a payment by the application of his property would bind the property and constitute a valid transfer of it, as against creditors.

The other class of cases, bearing upon this point, are perhaps still more frequent and familiar. I allude to the assignments by insolvent debtors, for the security and satisfaction of creditors. Scarcely an instance of such an assignment, usually of the debtor's whole property, occurs, in which there is not a provision that the property or its proceeds shall be applied to the payment of the assignor's debts, indiscriminately, as well those *solvenda in futuro*, as those *solvenda in præsenti*. Was it ever doubted that such property could be held, either by such creditors, if made to them directly, or by the assignee appointed to take the property in trust for their use, against the subsequent attachment of another creditor whose debt is due presently ? The courts here, having once admitted the principle, that a debtor may give a preference to any of his creditors, whether their debts are due immediately or not, a principle which avoids the operation of all those rules derived from the principle of the bankrupt laws, it follows, as a consequence, that a debtor may lawfully appropriate his property to the discharge of any one of his actually existing debts, provided only that it be done

6 *

Newbury-
port Bank
*v.*
Stone.

in good faith and the property is estimated at its full and fair value, and without any unfair advantage on the part of the creditor or any secret trust in favor of the debtor.

These cases are strictly analogous to the one at bar. Gage was a debtor to the tenant to an amount exceeding the value of the property, but it was *debitum solvendum in futuro*. It was however certain, absolute, depending on no contingency. Under these circumstances, a conveyance of the property in satisfaction and discharge of this debt, was a good and valid conveyance, as well against the creditors of the debtor, as against the grantor and his heirs, and therefore the tenant is entitled to judgment on the verdict.