## REED, Ex'r, v. BLAISDELL.

A married woman may make a valid testament, with the consent of her husband given at the time of its execution and not afterward revoked, disposing of her choses in action, whether legally hers, or such as her husband holds in trust for her.

A will of a married woman, purporting upon its face to dispose of real estate in addition to choses in action, may be proved so far as it relates to these, if it appear that she had no real estate and did not claim to have any, when she made the instrument.

If the husband at sundry times before, and at the execution of a testamentary paper by the wife disposing of a chose in action, verbally consent to such disposition, it is such consent as is required for the validity of such instrument as a will.

If one holding a note payable to himself, for a debt due in the right of his wife, cause the same to be cancelled and a new note from the same parties to be made payable to the wife, the same is from that time to be considered hers, whether it accrued before or after marriage, as against mere volunteers under the will or intestacy of the husband.

APPEAL from the decree of the court of probate disallowing the will of Caroline Blaisdell. The testatrix was a married woman and executed the will during the lifetime of her husband, whom she survived.

It appeared that about two years before the date of the publication of the will, the testatrix being then sick spoke in the presence of her husband about making her will, and that he was desirous that she should do so. He spoke of a note signed by Cheney Reed and Jonathan E. Reed, payable to him, and said that it was her property and that she had better have it made payable to her; that she might dispose of it as she should see fit, and that he did not wish to have any thing to do with her property.

In the evening of the second of November 1842, there was another conversation between the testatrix and her husband about making their wills. He said that if he made his, it was his desire that she should make hers; and she said that she intended to do so.

On the fourth of the same month, they being both sick

said to a witness that they had been talking about making their wills, and wished the witness to write them. Having written that of the husband, the testatrix in his presence requested the witness to write hers, which he also did : and the parties executed their wills on the same day in the presence of the same witnesses and in the presence of each other. While the husband was talking about making his will, he requested the witness to go to a desk and fetch a certain drawer to him. This was done, and from it he took a note signed by Cheney Reed and Jonathan E. Reed, for one hundred and thirty dollars payable to John Blaisdell or order on demand, with interest annually, and said, " This note is Caroline's property ; it came from her father." He usually called his wife, Caroline. He then requested the witness to write a new note and make it payable to Caroline or her order, which was done, and the new note signed by the Reeds, and the old note cancelled. Neither party spoke of any real estate, and the person who drew the wills inserted it in the residuary clause because such was the form which he found in Richardson's Justice. She said she wished to make her will merely to dispose of the note for one hundred and thirty dollars, which was her own separate property.

One of the persons who attested both of the wills testified, that on the day they were executed, he was requested by the decedent in the presence of her husband to come and witness her will, and subsequently in the presence of the husband did so without objection being made by him.

It further appeared that she owned no real estate. John Blaisdell died on the 8th and the testatrix on the 17th of November 1842.

*Pierce & Fletcher*, for the appellant, as to the point taken before the Judge of Probate, that a will can not be proved in part and rejected in part, cited a case very like the present, namely, *Deane* v. *Littlefield*, 1 Pick. 243, the only

difference being, that in that case the testator was an infant, and the reasons given for that decision are equally valid in this case.

As to the case cited by the appellee's counsel, showing that a wife's chattels and choses in action vest absolutely in the husband by marriage, this doctrine must be taken with many grains of allowance as my Lord Coke sayeth.

It is apprehended that the cases cited giving at first blush color to this doctrine, are so decided to secure the rights of the husband's creditors, and rests on facts and reasons differing widely from the present case. Instance 8 Mass. 229; 7 Pick. 65, and 12 Pick. 176; also 8 Pick. 211.

The case in 5 Pick. 461 depends on the particular effect of a divorce *a mensa et thoro*, and the court indirectly, to increase the wife's alimony, secures the separate rights of the wife and establishes the equity of the appellant in this case.

The appellant is obliged to the appellees for the reference to cases cited in 1 Mod. 211; 1 P. W. 441.

It is believed that the doctrine of *Shuttleworth* v. *Noyes* and trustee, before cited, 8 Mass. 229, has been overruled in this State in a case decided July Term 1844, in Merrimack county, in which Farley was of counsel for the plaintiff, but whether that and the other similar cases be good law or not, the present case may well stand notwithstanding, as here no rights of creditors intervened.

And supposing the wife was owing debts at the time of her decease, contracted before her coverture, which may be, the note in question should be protected by this court for the benefit of her creditors as well as her legatees.

But although the husband as between himself and wife has the right to reduce to possession in his lifetime her chattels and choses in action, he certainly has the right not to do it, and this case clearly shows that he chose not to do it so far as the note is concerned. And

the right to reduce to possession that debt did not survive to his heirs, but died with him.

*Norris & Gunnison,* for the appellees. A feme covert can not devise real estate either with or without the consent of her husband. This will devises all her real estate and therefore can not be allowed. The circumstance that she survived her husband does not render her will valid, as she did not republish it after his death, and therefore the will is void. See *Osgood* v. *Breed,* 12 Mass. 525; *Marston* v. *Norton,* 5 N. H. 205, and authorities there cited.

A will can not be allowed in part and not in full, as that would defeat the interest of the testatrix, for in distributing one's estate each devise and bequest is in some measure the condition of each other. Parol evidence can not be admitted to alter a specialty; the will therefore is the only evidence of what is intended to be devised or bequeathed. No evidence is admissible to show what the testatrix intended to have written. The question in expounding a will is not *what* a testator meant as distinguished from what his wants express? but simply what is the meaning of his words? and therefore no evidence can be admitted explanatory of the clause devising real estate; but it must be construed as it reads. See Wigram on Interpretation of Wills, pp. 8, 9. After the probate of a will the capacity of the testator or testatrix can not be questioned; therefore this will should be rejected. *Marston* v. *Norton,* 5 N. H. 205, and cases there cited. The following cases were also cited: 1 Mod. 211; 1 P. W. 441; 3 P. W. 356.

The will can not be established as to the personal property, because it does not appear that the wife had any in her own right at the time of the execution of the will, her husband John Blaisdell being then alive. This applies as well to the note of $130, as to any other personal property of the husband. This note it appears by John-

Reed v. Blaisdell.

son's deposition, came by said Caroline's father, and was originally made payable to the husband, and went into his possession and there remained till the day of the execution of the will. Its being taken up at that time and made payable to the wife, did not divest the husband of his property in the note; but at his decease it went to his executor, and is liable to pay his debts. This note with the rest of the personal property of John Blaisdell the husband, goes into the hands of his executors, and is chargeable with the payment of his debts.

The note bequeathed in this will had been reduced to the possession of the husband by receiving. *Legg* v. *Legg*, 8 Mass. 99.

That making the wife payee in said note, and that all notes payable to the wife during coverture, and that property acquired by the wife during coverture does not transfer the same to her, but is absolutely the husband's and should go to his executors and not to her executors. *Bradley et ux.* v. *Hunt*, Gill & John. 554; *Shuttleworth* v. *Noyes*, 8 Mass. 229; *Commonwealth* v. *Manerly*, 12 Pick. 176; *Russell* v. *Brooks*, 7 Pick. 65; *Richmond* v. *Dean*, 5 Pick. 461; 7 East. 432; *Clayton* v. *Adams*, 6 T. R. 604; *Keith* v. *Woombell*, 8 Pick. 211.

The delivery of a promissory note, not written " or bearer," to the wife, by the husband in his last sickness, will not pass the property in the note; therefore it can not be made to take effect as *donatio causa mortis;* and in no case can such a gift take effect till the decease of the giver. Therefore this note could not be the wife's to bequeath during his life. See *Miller* v. *Miller*, 3 P. W. 356; *Lawson* v. *Lawson*, 1 P. W. 441; *Rankan* v. *Wegnelin* at the Rolls June 14, 1832.

A feme covert can not bequeath personal property but by the consent of the husband. It does not appear that the husband of the said Caroline ever gave his assent to her will, or that the said will was ever read in his pres-

ence and hearing. Indeed at the hearing before the Judge of Probate, George W. Johnson testified that the will was never read in the presence of the husband. When a wife bequeaths personal property, the husband's assent is necessary, because it is his gift and not hers. Therefore his assent must be a part of the will itself; at least his assent must be in writing under his hand if not seal; "the gift if it is effectual is his gift and the property passes from him." See 1 Mod. 211; *Osgood* v. *Breed*, 12 Mass. 525; *Marston* v. *Norton*, 5 N. H. 205.

GILCHRIST, J.  The instrument which the appellant seeks to establish as the will of Caroline Blaisdell, was made by her during the lifetime of her husband; but the evidence very clearly shows that he advised and consented to its being made and published as her will; there is no evidence that he ever afterward revoked his consent to that act; it also appears that she survived her husband; and there is no evidence that during the period of her exemption from the disabilities of coverture, she herself ever sought to revoke or reconsider the act.

The will in its form is such as would be sufficient to pass real estate if the party executing it had been at the time seized of such, and competent in law to make an effectual devise of it.

The rights and disabilities as it regards this subject, pertaining to the state of coverture, are succinctly stated by Mr. Justice Blackstone.  " Among the Romans there was no distinction; a married woman was as capable of bequeathing as a feme sole.  But among us a married woman is not only utterly incapable of devising lands, being excepted out of the Statute of Wills 34 and 35 Her. 8, c. 5, but also she is incapable of making a testament of chattels, without the license of her husband.  For all her personal chattels are absolutely his; and he may dispose of her chattels real, or shall have them to himself if he

survives her. It would be therefore extremely inconsistent to give her the power of defeating that provision of the law, by bequeathing those chattels to another. Yet by her husband's license she may make a testament, and the husband frequently upon marriage covenants with her friends to allow her that license. But such license is more properly his assent; for unless it be given to the particular will in question, it will not be a complete testament, even though the husband beforehand hath given her permission to make a will."

In this State in *Marston* v. *Norton*, 5 N. H. 205, it was held, that a married woman could not in any case make a valid devise of real estate, although her husband at the time of the execution of the testamentary act, signed and sealed an instrument expressing his assent that she should devise her land. But *Richardson*, C. J., said that her will of her chattels may be made valid by the assent of her husband, " because the gift is in effect his gift, and the property passes from him."

The same is the doctrine of *Osgood* v. *Breed*, 12 Mass. 532, and the same reason is assigned.

The *dicta* in the two cases referred to, relate to the power of the wife in regard to chattels within the absolute control of the husband, and not to *choses in action*, or to property considered in equity to be hers. In the former case the property is in him both in law and equity; in the latter it is either in the wife, or in others in trust for her, and has been generally recognized as a legitimate subject of the exercise of some kind of testamentary power on the part of the wife. Stat. 29 Car. 2, chap. 3, sec. 24, makes a reservation in favor of the husbands of married women who " die intestate." *Rex* v. *Dr. Bettesworth*, 2 Strange 1111–12.

It may not be necessary in the present case, to insist upon any such distinction with reference to the formal nature of the assent required to be given by the husband

for the purpose of giving effect to the will of the wife, or with reference to the kind and degree of evidence necessary to establish such assent; but it may yet be pertinent to take notice, that the particular property upon which the testamentary paper was intended to act, was in fact the property of the wife herself, and in the event of her surviving him, which actually occurred, was absolutely hers as against his personal representatives. At least it so appears from all the evidence that is found to exist bearing upon the subject.

By the admissions of John Blaisdell himself the debt due from the two Reeds was hers in the beginning, as having come to her in some manner from her father; so that although the security stood in his name, he was in fact no more than a trustee for her, as he well might have been. And it is no matter whether this chose in action accrued to her before the marriage, as in *Stanwood* v. *Stanwood*, 17 Mass. 57, or afterward, as in *Nash* v. *Nash*, cited by the court in that case from 2 Mod. 133.

Indeed upon the authority of *Christ's Hospital* v. *Bugin*, 2 Vernon 683, it might be held to be immaterial what the origin of the debt was, provided the husband saw fit to take the security in the name of the wife, and that in such a case it would survive to her upon his decease, there being no creditors who would be defrauded by such an arrangement.

The authorities contain some disquisition as to the evidence needful to prove the assent of the husband to the testamentary act of the wife; and it appears that a covenant on the part of the husband that the wife shall so dispose of her property, in general, is not sufficient, *Rex* v. *Bettesworth* (Cullom's case), 2 Strange 891, although it seems by that case that it would have been sufficient, if it had appeared that the will which she had made was such an one as her husband had so agreed that she might make.

Reed v. Blaisdell.

But in the present case the evidence is quite clear, that the husband both assented and advised to the making of a will that should dispose of the note of the Reeds, and that when he knew that she had made a will, and saw it executed, he by tacit acquiescence confirms the act, so that no doubt can exist that the instrument set up as her will was made and executed with his consent, and is such a will as he consented to her making, unless the insertion of the clause with respect to the real estate shall appear to vitiate it.

It is not apparent that it can or ought to have any such effect. In *Deane* v. *Littlefield*, 1 Pick. 243, *Parker*, C. J., in delivering the opinion of the court says, that "At the common law, a will which was good to dispose of personal estate but not for real, might be set up for the former, though not for the latter." And it appears from the authorities cited by counsel in the argument of that cause, that wills of this description were proved in the spiritual courts. Now the will of a married woman disposing of lands is in all cases merely void, as has been seen.

In addition to this, there was no land upon which it could have been intended to operate; so that it was to every intent such a will as the husband consented to her making.

The conclusion therefore is, that the decree of the court of probate disallowing the instrument in question to be proved as the will of the decedent Caroline Blaisdell, must be reversed, and the same must be admitted to be proved as her will with respect to the personal property therein bequeathed. The case must be remanded to that court for further proceedings in conformity with this decree.

*Decree accordingly.*