# SUPREME JUDICIAL COURT

FOR THE

## COUNTY OF ESSEX, NOVEMBER TERM 1853, AT SALEM.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY, ⎫
Hon. GEORGE T. BIGELOW, ⎬Justices.
Hon. BENJAMIN F. THOMAS,⎭

---

## Samuel Parker vs. William Parker.

If a will be originally made, proved, and allowed in another state, according to the laws thereof, the filing and recording a copy thereof in the probate court of this commonwealth, as provided by Rev. Sts. c. 62, § 19, has the same effect upon any real estate situate here, as if the will had been originally proved and allowed here.

In this commonwealth, the decree of the court of probate duly approving and allowing the will of a married woman, unappealed from and unreversed, is final and conclusive upon the heirs at law of the testator, and they cannot, in a court of common law, deny the legal capacity of the testatrix to make such will.

TRESPASS, under Rev Sts. *c.* 105, §§ 7, 8, to recover damages for cutting and carrying away wood and timber from certain real estate in the town of Saugus, of which the plaintiff claimed to be coparcener with the defendant, who, however, denied the plaintiff's title, claiming sole seisin in himself, under the will of his grandmother, Anna Jenness, and a deed from his brother, Timothy Parker, to himself.

The case was submitted to this court upon an agreed statement of facts, which, so far as material to the point involved in the case, may be gathered from the opinion of the court. The case was argued in writing at a former term.

*O. P. Lord,* for the plaintiff.

*A. Huntington & T. B. Newhall,* for the defendant.

DEWEY, J. The real estate, the subject of this action, is situate in the town of Saugus, (formerly a part of Lynn,) in the county of Essex. It was, as is conceded, formerly the property of one Anna Jenness, under whom both parties claim to hold their alleged estate; the plaintiff by descent, as one of the heirs at law of William T. Parker, the son of Anna Jenness, in the right of representation of his father, Samuel Parker, the son of said William T. Parker, and who had deceased before said William T. Parker.

The defendant denies that any estate came by descent to William T. Parker, as son and heir at law of Anna Jenness, but asserts, on the contrary, that the real estate of Anna Jenness was, by force of her last will, devised to said William T. Parker and Timothy Parker and their wives during their lives, and after the termination of these estates for life, the remainder was given wholly to the defendant and his brother, Timothy Parker, whose interest he has since acquired by deed.

To sustain the defence, and establish a title under the will of Anna Jenness, the defendant produces a duly certified copy of an instrument purporting to be the will of said Anna Jenness, executed on 14th August, 1810; shows her death to have taken place in 1816, and that the will was, after due notice, duly approved and allowed by the court of probate in the state of New Hampshire, where she resided, and that sub-

sequently, the executor and devisee therein named, presented a petition to the probate court, for the county of Essex, in the state of Massachusetts, representing that there was real estate there situated, upon which it might operate, and praying that the copy of said will and decree might be filed and recorded in the probate office for the county of Essex, pursuant to the statutes. Rev. Sts. *c.* 62, § 19. This petition was presented at a probate court in January, and due notice given of the same, and at a court of probate holden in April, 1817, the said copy of said will, with the copy of probate annexed thereto, was ordered to be filed and recorded in the probate office for the county of Essex. The form of the instrument set up as a will, the words of the devise, the probate of the same in New Hampshire, and the filing and recording a copy of the same in the probate court in Massachusetts, are all in proper form, and such as would be effectual to vest the estate in the defendant, unless the single exception taken to the will shall be held fatal to it, viz: that Anna Jenness was at the time of executing said will, a married woman, and the wife of Joseph Jenness, who died in the year 1815, the said Anna having survived her said husband.

The fact that she was then under coverture is conceded, and the great question in the case is, therefore, whether by force and effect of this will and the probate thereof in the manner above stated, that real estate has vested in the devisees named in her will, or by reason of her coverture the will was inoperative, and the estate passed to her heirs at law, as intestate estate.

The fact that her husband died while she was yet living, will not change the aspect of the case, unless it be found that she republished the will after his death. Nor does the express assent of the husband, signified by signing his name thereto, give validity to the will of his wife of her real estate. Independent of some authority acquired by an ante-nuptial contract, or by some conveyance to trustees, with a reserved power to devise the estate, at the date of the will, in New Hampshire and Massachusetts, a married woman could not devise her real estate. But such right might have existed in

44*

the modes suggested; and when it does, and the *feme covert* exercises the power given her of devising her real estate, her will is properly the subject of probate, either general or a qualified probate. The instrument is sometimes called an excution of a power rather than a will, but this is not material, as the instrument is properly to be presented for probate as a testamentary instrument. It derives its efficacy wholly from the authority to make the devise or disposition of the estate conferred on the married woman by some independent contract or indenture, adapted to effect this object. If no such authority is vested in the wife, and it be the naked case of a married woman making a will of her real estate, the will is not authorized by law, and the probate court should, as they have done in numerous cases, reject and disallow it wholly.

The records show that the will of Mrs. Jenness was duly presented for probate in the state of New Hampshire, that due notice was given to the heirs at law, and all persons interested, and that a decree was passed approving and allowing the will. Subsequently, a copy of the will was, in pursuance of the laws of Massachusetts, presented to the court of probate for the county of Essex, where the land is situate, by the executor and devisee, William T. Parker, stating that the said Anna Jenness had left real estate in said county of Essex, whereupon the said will may operate, and praying that the said will may be filed and recorded in the probate office for said county, and, in the language of the record, " it being made to appear to the court here that notice had been given to all persons, agreeably to the order of notice in said petition, and that the facts set forth in said petition are true, it is, therefore, considered and decreed by the court, that said copy of said will, with the copy of the probate thereof, as hereto annexed, be filed and recorded in the probate office for said county of Essex."

This record above recited, answers one position taken by the counsel for the plaintiff, that this will may have only been allowed to be filed and recorded in the probate office for the county of Essex, as a will operating upon personal property,

or as an authority to the executor to collect debts in this commonwealth. The foundation of the application to the probate court here was, as it seems to have been stated in the petition, that there was certain real estate in the county of Essex whereon the said will might operate.

It was contended on the part of the plaintiff, that the recital on the face of the will, that Anna Jenness "was the wife of Joseph Jenness," ousted the judge of probate of all jurisdiction over the instrument, and that his action thereon, and allowance and approval of the same, was wholly unauthorized for that cause. But this position is untenable. A married woman may, under certain circumstances, make a valid will of her real estate. If it were not so, no one of the numerous cases of probate of the will of a feme covert, for the purpose of giving effect to an ante-nuptial contract, or reserved power in a deed of trust of her estate, could have been properly acted on by the probate court. The testamentary paper of a married woman, call it a will, or power, as you please, is properly brought before the court of probate for allowance and approval as such. To give effect to it, there must have been a power somewhere conferred or reserved, sufficient to remove the ordinary incapacity of a married woman to make a will. But the fact that the testatrix was a married woman, does not *per se* deprive the judge of probate of jurisdiction over her testament.

There was jurisdiction, therefore, in the probate court, to some extent, to adjudge and decree as to the probate of this instrument. The question is, to what extent? We are, therefore, brought to the inquiry how far a decree of the court of probate, in New Hampshire, allowing and approving of this will, and the subsequent decree of the court of probate for the county of Essex, allowing the copy of the will, with the probate thereof, in New Hampshire, to be filed and recorded in the probate office in the county of Essex, operate as final and conclusive upon all persons, as to all questions of the validity of the will, including that of the capacity of Anna Jenness to make such will.

The proceedings in the courts of each state were, as re-

spects notice to the heirs and all persons interested, entirely conformable to law. The objection suggested, but not much urged, that William T. Parker was insane at this period, cannot avail the plaintiff. In proceedings of this nature, as the probate of wills, granting letters of administration, &c., the judge of probate having given that public notice which the law requires, the mere fact that some of the heirs are infants, idiots, or insane, will not defeat the probate of the will, or the granting of titles of administration. The fact that the testatrix was a resident of New Hampshire, and there died, and that the real estate was situate in Massachusetts, thus making it necessary to prove the will, in the first instance, in New Hampshire, and subsequently under the provisions of our statute, to file the same in the probate office, under a decree of the judge of probate, for the county of Essex, does not vary the case from what it would have been if the probate had been that of a will of an inhabitant of Massachusetts and the probate exclusively here. The laws of Massachusetts and New Hampshire were, at that period, similar, as to the power of a married woman to make a will. The case of *Dublin* v. *Chadbourn*, 16 Mass. 433, fully meets this point of the effect of an original probate of a will in another state, and the subsequent filing a copy of the same in the probate court of the state in which the real estate devised was situate. Jackson, J. delivering the opinion of the court in that case, says: " When a will is originally proved and allowed in any other state or country, according to the laws of such state or country, the filing and recording of a copy in our probate court in the manner prescribed by the statute, is of the same force and effect as if the original had been allowed and proved here." See Rev. Sts. c. 62, § 19.

The question before us is, therefore, virtually, what is the effect to be given to a decree of a court of probate of thi. commonwealth, allowing and approving of an instrument as a last will and testament. That the court of probate in Massachusetts have jurisdiction over the probate of wills of real as well as personal estate, and that its decrees, not appealed from, are conclusive upon all parties, and not reëxaminable,

collaterally, in other courts, is very clear, and will not be controverted. *Osgood* v. *Breed,* 12 Mass. 525; *Laughton* v. *Atkins,* 1 Pick. 535; *Dublin* v. *Chadbourn,* supra.

That such decree finally settles all questions of the sanity of the testator, the attestation by proper witnesses, and indeed any thing that is embraced in the due execution of a will, is directly settled in the case of *Dublin* v. *Chadbourn.* The defendant insists that the decree allowing and approving of the will, embraces all the requisites to a valid will, such as the adult age, the sanity of the testator, the competency of the witnesses, and due attestation by them, and in case the will be one made by a female, that she was a *feme sole,* or if a *feme covert,* was acting under some power reserved in ante-nuptial contract, or conferred by some trust deed of her estate, or other mode, removing the ordinary incapacity that attaches to married women in reference to making wills.

In deciding upon the effect to be given to the probate of wills in Massachusetts, devising real estate, we are to bear in mind that the jurisdiction of such courts applies here as well to real as personal estate. This distinction is material in considering the adjudicated cases that have arisen in the courts where the jurisdiction was wholly confined to personal property. Thus in England the ecclesiastical courts having no jurisdiction over wills of real estate, all questions as to the validity of such wills are open to examination in the common-law courts. Such also has been formerly the law in New York, New Jersey, Maryland, and South Carolina. On the contrary, in Massachusetts, Maine, Connecticut, and Ohio, the jurisdiction of the courts of probate extends to wills of real estate.

In courts of probate limited in jurisdiction to personal estate, the principle of the conclusiveness of the decree is of course to be confined to wills of personal estate, but the extent to which such decrees as to wills of personal estate have been held final and conclusive as respects such wills, furnishes a strong analogy for the application of the like doctrine of conclusiveness of decrees as to real estate, in those courts that have jurisdiction of wills of real estate. It was the

doctrine of the supreme court of the United States, in *Thompson* v. *Tolmie*, 2 Pet. 161, " that if the jurisdiction of the courts attaches to the subject matter, the proceeding cannot be examined collaterally in any other court." Taking this rule as our guide, the inquiry will be whether in this commonwealth the jurisdiction of the court of probate attaches to the question whether the testatrix, although a *feme covert*, had through some legal source the power to make a valid devise of her land. It is certainly true, as has been already stated, that there are cases where married women may make a will of their real estate, and where the judge of probate may properly approve and allow the same. Certain it is, that not only the court of probate for the county, but the supreme court of probate, on an appeal, have in numerous instances entertained jurisdiction of the probate of such wills of married women, and considered and decided upon the power of the *feme covert* testatrix in the particular case before them, to make a will. The cases of *Osgood* v. *Breed*, 12 Mass. 524; *Holman* v. *Perry*, 4 Met. 492; *Smith* v. *Sweet*, 1 Cush. 470; *Morse* v. *Thompson*, 4 Cush. 562; and *Heath* v. *Withington*, 6 Cush. 497, were all cases on appeal in the supreme court of probate on the question of approving and allowing the will of a married woman. In two of them the question of the sufficiency of the ante-nuptial contract, or trust deeds, to give the power to the wife to make a will, was directly considered by the court, and in the others the question was, whether the cases came within the *St.* of 1842, *c.* 74, which authorized married women to make wills of their separate estate in certain cases. In some of these cases, the decree was in favor of the will, and the sufficiency of the authority, and in others, it was held insufficient, and probate of the will was refused. If the question of the right of the *feme covert* testatrix in the particular case to make a will is not within the jurisdiction of the court of probate, then it would seem that that court should only inquire as to the formal execution of the will and the sanity of the testatrix, and if these were shown to the satisfaction of the court of probate, the will should be allowed and approved, leaving all questions as to the authority of the *feme covert* to

make a will, to be decided by the courts of law wherever the title to the property devised came in question. Such has not been the practice, but on the contrary the court of probate has heard and considered the question of the power of the testatrix to make the will. In the case of *Osgood* v. *Breed*, above cited, the supreme court of probate did entertain this question and did deal with it as though it appertained to their jurisdiction. The language of Jackson, J. in giving the opinion of the court in that case is very strong on the question of the finality or conclusiveness of a decree of the court of probate allowing the will of a married woman. Says the learned judge, " If she was under a legal incapacity to make a will, as to either of the parcels of land devised, it cannot be approved and allowed in the common form. By our laws the probate of a will is conclusive as to real as well as personal estate, and if this should be allowed and approved in the probate court it could not afterwards be questioned whether the testatrix was legally capable of devising the land in Charlestown (being certain land not included in any indenture which professed to give her authority to devise the same)." The court then proceeded to examine critically the indenture as to other parcels of land, for the purpose of deciding whether there was any sufficient appointment or authority to authorize them to approve of the will as valid as to such other parcels. This case deals with the question of the power of the testatrix to make a will, as within the jurisdiction of the probate court, and in the opinion directly affirmed that a general allowance and approval of the will would be final and conclusive as to the capacity of the testatrix to devise all the various parcels of land devised by her will.

In *Holman* v. *Perry*, *supra*, the court of probate did hear and adjudicate upon the question of the right of the testatrix, a married woman, to make a will. The language of Parker, C. J. in the cause of *Laughton* v. *Atkins*, 1 Pick. 547, upon the general question of the conclusiveness of the decrees of the court of probate as to wills of real estate is thus: " All persons interested in an estate of a person dying testate or intestate, are bound by the proceedings in the probate office as

far as the judge has jurisdiction of the subject, if they have notice of the case to be acted on." Again: " Heirs at law are bound by the public notice, and no instance exists of their being allowed to object to the execution or the validity of a will which has been regularly proved in a due course of probate proceedings, they having had notice."

In the case of *Strong* v. *Perkins*, 3 N. Hamp. 518, it was said by the court, " when the will has been allowed and proved in a court of probate, it becomes conclusive evidence in all other courts, and neither the due execution of the instrument, nor the capacity of the testator can be called in question." The case of *Tompkins* v. *Tompkins*, 1 Story R. 547, and *Cassels* v. *Vernon*, 5 Mason, 334, are to much the same effect. The case of *Patten* v. *Tallman*, 14 Shepley, 17, is equally strong. It is true that the cases just cited did not directly raise the question of the effects of a decree of a probate court as to the will of a married woman. They are cited for their general principles as to the conclusiveness of a decree of a court of probate allowing a will of real estate. They are broad enough to include the present case, but whether they do in fact is the question.

But other reported cases bearing upon this subject, do furnish decisions upon the very point now in issue. Such is the case of *Judson* v. *Lake*, 3 Day, 318, where in a trial in the common-law court in the action of ejectment, one of the parties relied upon a title by devise by the will of a married woman that had been allowed and approved by the probate court. The opposing party objected to its validity as a will, upon the ground that the testatrix was a married woman, but it was held by the supreme court of that state that the decree of the court of probate establishing a will containing a devise of real estate by a *feme covert*, was conclusive upon the heirs at law of the testatrix, until disapproved on appeal or set aside in due course of law.

The case of *Poplin* v. *Hawke*, 8 N. Hamp. 124, presented a similar point involving directly the effect of the decree of the probate court, allowing the probate of the will of a married woman, and the court held that the decree was conclusive as

to the validity of the will, and that the matter could not be questioned collaterally.

We find, from the cases that have been cited, the general principle stated by various tribunals, in terms quite broad enough to include the present case, though it was not the precise case that was under consideration. We find the two cases from Connecticut and New Hampshire involved the very question before us, and the general principle of finality and conclusiveness of such decrees was held to embrace the case of the will of a married woman. We find the courts of Massachusetts have freely taken jurisdiction of the question of the power of the *feme covert* to make the will, on the presentation of the same for probate, and have allowed or rejected the same as they found the authority to exist, thus giving practically their views that this matter was within the jurisdiction of the court of probate. If this course of proceeding both in the probate court below and the supreme court of probate on appeal has not been erroneous, then the court of probate is in the exercise of its legitimate jurisdiction in deciding on the validity of the will of a married woman; and if so, the general principle, that all decrees of the probate court upon matters within its jurisdiction are final and conclusive, applies to the question of the capacity of the testatrix to make the will.

The cases cited from New York, and other states where the English rule has prevailed, of confining the courts of probate to the allowing and approving of wills of personal property, for reasons already stated, do not apply here. In those states, and in Pennsylvania, where the probate of a will of real estate is held only *primâ facie* evidence of its validity, the whole question of proper execution of the will is open, in the courts of law, and it may as well be attacked for want of competent witnesses, or sanity of the testatrix, as for her want of capacity by reason of her coverture.

Our whole system is different. As to the due execution and attestation of the will, and sanity of the testator, all agree that the decree of the court of probate, allowing and approving the will, is final and conclusive. The cases referred to, are

not therefore, adapted to our system, but contravene directly our well-settled practice as to the finality of the decree of a probate court. There has been, I am aware, to some extent, an opinion among the legal profession that the conclusiveness of a decree of the court of probate, allowing and approving a will, was confined to the proper execution of the will, including therein the sanity of the testator; and that in the case of probate of the will of a married woman, the question of her authority to make the will was an open one, on a question of title raised in the common-law courts. The opinion in the case of *Holman* v. *Perry*, 4 Met. 492, gives countenance to that view of the law. The case itself was one that properly required the probate of the will, as the power to devise one of the parcels of land was fully established by the indenture and trust deed executed before the marriage of the testatrix, in which she reserved full power to dispose of the estate by will. The right to devise the other was questionable, and the court ordered that the instrument offered for probate as the will of Mrs. Perry be approved and allowed, and that it have full force and effect upon all property subject to her disposal by any appointment or disposition of the same. Perhaps this may be considered as a qualified rather than a general probate of the will; certainly, the decree should have been for a qualified probate, if any distinction existed as to the right to dispose of the different parcels given by the will. So also, the suggestion that the probate of the will settles no question " as to the right to devise the property named in the will," must be limited to the subject of the title of the testator, and not considered as embracing the power to make a will.

As respects persons claiming adversely to the testatrix and not under the will, nor as her heirs at law, it is entirely accurate to say, that the probate of the will settles no question as to the right of the testatrix to devise the property named in the will. Such third persons are not parties to the probate of the will, and their title is not affected by the probate of the will. But as respects the heirs at law of the testatrix, they are the parties before the court, and the precise question is, whether the person whose will is offered for probate, died tes-

tate or intestate. It is the mere question of capacity to make the will, using that term in its broadest sense. As to all those essential elements of a valid will, the sanity of the testator, the signature of the testator, the due attestation by three competent witnesses, the decree of the court of probate is conceded to be conclusive against the heirs. The question of power or authority to make a will is also an element of a valid will, and practically, as we have shown, has been treated and considered as one for the adjudication of the probate court, and within its jurisdiction. Such being the case, and the question of authority to make the will being fully open to be controverted by the heirs when the will is offered for probate, we perceive no greater objection to holding the decree conclusive on this subject, than would equally arise from the acknowledged effect of such decree upon the question of sanity of the testator, and the due execution by the testator, and the proper number and the competency of witness. They all go to the capacity of the testator and validity of the will ; as they are settled by the court of probate, so the party is found to have died testate or intestate.

This view of the matter does not take from the common-law courts the question of the construction of the will, as to any devise therein contained, or any question beyond the due execution of the will by a competent testator. To that extent the court is of opinion that the decree of the court of probate is conclusive upon those claiming as heirs at law of the testatrix.

It is proper, also, further to remark that the rights of the heirs at law as to property purporting to be devised by the will, but as to which the testatrix had no legal power of disposition, will be fully preserved by their requiring a limited probate of the instrument offered as a will.

I have not particularly noticed that part of the argument on the part of the defendant, that a republication of the will by Mrs. Jenness, who survived her husband, might have been shown to the probate court, and made the foundation of his decree, as the more general ground upon which we place the decision of the case renders it unnecessary. It is enough that

for some sufficient reason the probate of this will was allowed, and the same was approved; it being a judicial act of one having jurisdiction of the subject, and no appeal taken therefrom.

*Judgment for the defendant.**

---

* There was also a petition for partition, argued at the same term, involving the same facts and questions of law, and in which,for the same reasons, judgment was given for the respondent.