### CYNTHIA J. MORSE *vs.* EDWIN THOMPSON.

The act of 1842, *c.* 74, does not enable a married woman to make a devise of her real
estate to her husband.   WILDE and DEWEY, Justices, dissenting.

THIS was an appeal from a decree of the judge of probate
for this county, approving and allowing the last will and
codicil of Roxa M. Thompson, deceased, a married woman,
and the wife of the appellee, by which she devised the whole
of her real estate to her said husband, and thereby disinherit-
ed the appellant, who was her only child and heir, of a val-
uable real estate, which would otherwise have descended to
such appellant.   The consent of the appellee was indorsed
on the will.

The appellant, who was a minor, and prosecuted this ap·
peal by her guardian, alleged as a reason for the appeal, that
by the law of this commonwealth, a married woman is
not competent to devise her lands and real estate to her
husband.

*J. Richardson,* for the appellant.

*J. J. Clarke* and *W. S. Leland,* for the appellee.

The opinion of a majority of the court was delivered by

FLETCHER, J.   The decree of the judge of probate, from
which this appeal was taken, approved and established the
will of Roxa M. Thompson, wife of Edwin Thompson, de-
vising her whole real estate to her said husband.   The ap-
pellant is the only child and heir at law of the testatrix.
The only question submitted for decision is, whether or not a
married woman can make a will devising her real estate to
her husband.

It seems to have been settled in very ancient times, that a
married woman might with the consent of her husband dis·
pose of her estate by will.   But by the common law, a mar
ried woman never could make a valid devise of land, with or
without her husband's consent, to any person whatever.   She
was considered so entirely under the power of the husband,
that she could in no case make what, in propriety of speech,
is called a will.   *Marston* v. *Norton,* 5 N. H. 205.   It is said

by the court in the above case, that a married woman is not, by the common law, *sui juris,* but is *sub potestate viri.* She is under a civil disqualification arising from want of free agency, and not from want of judgment.

The English statute of wills, 32 Hen. 8, *c.* 1, authorized any person having lands, &c., to devise them, and it seems to have been the better opinion, on the construction of that statute, that a married woman could not make a valid will of lands. But as "divers doubts, questions and ambiguities" had arisen or were apprehended, on that and other points, the statute of 34 and 35 Hen. 8, *c.* 5, was made to remove them ; and this last statute (§ 14) expressly prohibits such devises by married women. 1 Jarman on Wills, (Perkins's 2d ed.) 29.

In this commonwealth, by a statute passed in 1692, it was enacted, that any person, lawfully seized of any lands, &c., in his own proper right in fee simple, shall have power to give, dispose and devise, as well by his last will and testament in writing, as otherwise by any act executed in his life, all such lands, &c. Prov. & Col. Laws, 230. The statute of this commonwealth of 1783, *c.* 24, contains a provision substantially in the same language, and is also substantially the same, as the English statute of wills. There is no express exception of married women in this statute, which gives power to every person of full age and sound mind, being seized in his own right of lands, &c., to dispose of the same by will; and yet it has been held, that this does not give married women the power to devise their estates. *Osgood* v. *Breed,* 12 Mass. 525. The provision in the Rev. Sts. *c.* 62, § 1, in regard to wills, is substantially the same as that in the statute of 1783.

It is clear, therefore, that the testatrix, being a married woman, had no power, under the general law in regard to wills, to make the will in question. She had no particular or special power derived in any way or manner whatever. If, therefore, she had any power to make a will, it must have been wholly and exclusively by force of the **statute of** 1842, *c.* 74.

She had such power, and only such power, as was given her by this statute ; and the precise question here is, whether by this statute she had power and authority to make a will giving her estate to her husband. The whole case turns entirely on the construction of the statute. The statute, manifestly, upon the face of it, does not give to married women a general, unqualified, absolute power to make wills, disposing of their property and estates, but there are provisions and limitations. The act, after providing that any married woman may devise and dispose of, by last will and testament, any property held in her own right and separate from that of her husband, then has the following proviso, to wit: " Provided, that the rights and interests of the husband, in and to any such property, shall in no way be affected thereby."

It was maintained, in the argument for the appellee, that by this proviso in the act, the wife was prohibited from disposing of her property by will, to the prejudice of the rights and interests of the husband, but that she might make a will favorable to his rights and interests, by giving him all her property. There is certainly no such distinction to be found in the terms or import of the proviso itself. Besides, upon that construction, the act enables the wife to give to her husband absolutely her real estate, in which he has a life interest, and any other property in which he is interested, but prohibits her from giving either to any one else ; and by a subsequent provision in the act, she is not allowed to make this devise to her husband, without his express consent in writing indorsed on the will. It is hardly credible, that the legislature should pass such an act.

In truth, the terms in this provision in the act are perfectly clear and unambiguous, and have one and but one distinct, intelligible meaning. The terms are : " Provided, that the rights and interests of the husband to and in any such property shall in no way be affected thereby :" that is, the rights and interests of the husband, in the property of his wife, shall be in no way affected by her will. The wife, therefore, has no power by the statute to make a will, by which the

rights and interests of her husband to and in her property will be in any way affected. The statute does not say, that the rights and interests of the husband to and in her property shall be in no way prejudiced, or impaired, or unfavorably affected, by the will of the wife; but shall be in no way affected, favorably or unfavorably, diminished or increased.

The husband shall not be made richer or poorer, but shall be entirely disinterested in regard to the disposition which the wife may make of her property by will. Such ·is the plain, clear import of the terms of the act, and such must be taken to be the meaning of the legislature, unless there be something in the act to control and qualify the meaning of these terms, and to show a different intention in the legislature. Upon this construction, a meaning and effect can be given to every part of the act. The remainder of the wife's real estate, after the expiration of the husband's life estate, personal property held in trust for the wife, and perhaps other property of the wife, may be disposed of by her will, under the provisions of the act. The legislature may have intended, by taking away from the husband all interest in the disposition which the wife may make of her property by will, to exempt her from his control arising from the relation of husband and wife, and which by the common law is a disqualification of a married woman for devising her lands.

A testamentary disposition of a wife of her personal property in favor of her husband has been held void, though made with his consent; such a bequest of a feme covert to her husband with his consent being considered as nothing more or less than a gift of a husband to himself. *Hood* v. *Archer*, 1 McCord, 225.

The other parts of the act favor this construction of this clause. The next clause is as follows: " Nor shall such will be valid, unless such husband, if of sound mind and competent to act, shall give his assent thereto, expressed in writing and indorsed thereon." In the present case there was a compliance with this provision. The consent of the husband in writing that the wife should give her property to him was indorsed on the will. But if a will can only be made in

favor of a husband, and in no case unfavorable to his in-
terests, it would hardly be necessary to require his forma.
assent.

The clause in the act, in regard to the interests of the hus-
band, must have either the construction put upon it by the
appellant, that the rights and interests of the husband shall
be in no way affected, favorably or unfavorably, by the will
of his wife ; or that put upon it by the appellee, that the
rights and interests of the husband may be favorably but
cannot be unfavorably affected by such will. It would seem,
that the latter cannot be the true construction, from the sub-
sequent clause, which requires the assent of the husband to
the will, which upon this construction can only be in his fa·
vor, so far at least as regards all property, in which he would
have an interest if there were no will. Upon this construc-
tion, the legislature is made to enact, that a wife may make
a will in favor of her husband, and in favor of no one else,
but that she shall not be allowed even to give her husband
her property, without his consent in writing indorsed on the
will. It is not easy to believe, that the legislature would
make such a law.

But if, by the act, the husband would have no interest in
the will of his wife, to require his assent to give it validity,
was, on many accounts, highly reasonable. To require such
assent was reasonable, with reference to the relation of hus-
band and wife, and to protect the wife against any injudi-
cious or unsuitable disposition of her property. In a matter
of so much importance, it was reasonable to require, that
the wife should act with the advice and consent of her hus-
band ; he not being exposed to the influence or bias of any
personal or private interest of his own. But the act pro-
vides, that if the husband is not of sound mind and capable
of acting, then the wife may act alone.

Upon the whole, the conclusion is, that the provision in the
act that the rights and interests of the husband, to and in
any property of the wife, shall be in no way affected by her
will, necessarily and in express terms prohibits the wife from
making a will giving her property to her husband ; as his

Morse *v.* Thompson.

rights and interests to and in her property would be directly and pointedly affected thereby, contrary to the provision of the statute, as there is nothing in the will but a devise to the husband, and as the wife could not, by law, make such a will, the decree of the judge of probate allowing the will must be reversed, and a decree disallowing the will entered.

DEWEY, J. I cannot concur in the opinion of a majority of the court, upon the question raised in the present case. After much consideration, I see no reason for reversing the judgment of the court of probate, establishing the will of Roxa M. Thompson.

The incapacity of a feme covert to make a will disposing of her separate property, prior to the statute of 1842, *c. 74,* was a general incapacity to make a will devising such property to any person, and not a particular incapacity to devise to her husband. There is nothing in the relation of husband and wife, that prevents either from being the object of a devise from the other. A will differs from a contract, or a gift *inter vivos,* in this material point, that it does not take effect while the devisor lives, and so in truth it transfers no right of property from one to the other, while the relation of husband and wife exists. The death of the testatrix or testator, which alone gives effect to a will, is also the termination of the marriage relation between the parties. Hence, although the husband cannot contract with his wife, or make her the grantee in a deed, during the coverture, yet it has never been doubted, that the husband may by his last will and testament give his estate, real and personal, to his wife. It is quite obvious, therefore, that the reason why a feme covert cannot by will devise her property to her husband, is not because of the intimate relation subsisting between them, or the oneness of the parties, as it is sometimes expressed; as that would as effectually debar the husband from making a will in favor of his wife, as a wife from making a will in favor of her husband.

The only real ground of objection, and that upon which the doctrine of the incapacity of the wife to make a will giving her separate property to her husband rests, is that by force

of her marriage relation, she is incapacitated to act in rela
tion to her property, and while under coverture can devise to
nobody.   Such is undoubtedly the effect of her intermarriage,
and unless this incapacity is overcome, by some previous
reservation of such right, through a proper instrument securing
to her power to dispose of her separate property, or by force
of some statute provision giving such power to a feme co-
vert, she cannot make a will devising her separate property to
any person whatever.   This restriction upon her is general,
and has no more application to a devise to her husband than
to a devise to a stranger.

A recurrence to the books of authority, upon this subject,
will be found fully to sustain the position, that where the
right is reserved to a feme covert before the marriage, by a
marriage contract or other proper instrument entered into
by the parties about to assume the marriage relation, or where
estate has been conveyed to a trustee with the reserved power
to a feme covert to devise by will, she may as well exercise
the power to devise by making a devise to her husband as to
a stranger.   The case of *Bradish* v. *Gibbs*, 3 Johns. Ch. 535
and cases there cited, are direct to the point.

The moment the incapacity is removed, and the genera
power attaches to a feme covert to make a will of her sep-
arate property, the power exists to make such will in favor
of whomsoever she pleases; and the marital relation no more
restricts the wife from devising her property to her husband,
than such relation restricts the husband from devising his
property to his wife.   The power in such cases is coextensive
as to both husband and wife.

The only real question in the present case is this: Has the
testatrix from any source acquired the general power to devise
her separate estate?   The case shows no ante-nuptial con-
tract or marriage articles, or any conveyance to a trustee, to
hold the same under a reservation of power after the mar-
riage to devise the same.   The only authority, for this feme
covert to make a will of her separate property, for the benefit
of any person, is derived from the statute of 1842, *c.* 74.   If
not found there, I admit this will cannot be sustained, by reason

of incapacity on the part of the testatrix, to make a will giv-
ing the property to her husband.

This brings us to the question of the proper construction
of the statute. Upon an examination of the statute, we find
the first clause very general, giving full and ample authority
to a feme covert to devise her separate property. If the stat-
ute had been limited to this clause, and had contained no
further provision, no one, I suppose, could doubt, that the
capacity was thereby conferred upon a feme covert to devise
her estate generally, and of course including the capacity to
devise to her husband. But appended to this general power
to devise is annexed the following language : " Provided that
the rights and interests of the husband to and in any such
property shall in no way be affected thereby."

The further inquiry is, whether the power to devise gener-
ally, which is so fully given in the first clause of the act, is
so limited by this proviso, as to except from the operation of
this statute all devises by the wife to her husband or for his
benefit. The proposition that I maintain as to this proviso
is this, that it was introduced solely for the benefit of the
husband, and to secure more fully his interests, by a declara-
tive clause, that any devises in the will of his wife should
not impair any of his rights to the property devised, be they
inchoate, as estates by the tenancy by curtesy, or rights under
deeds of trust, or antenuptial contracts by which such estate
would vest in the husband at the death of the wife.

In my opinion, " the rights and interests," which are the
subject of the proviso in this statute, are exclusively those
held and enjoyed by the husband independent of the will of
the wife, rights already secured to him through other legal or
conventional modes ; and this proviso has not the least ref-
erence to any rights or interests that may vest in him by the
mere effect of a devise to him in the will of his wife. If 1
am right in this view of the character of " the rights and in-
terests not to be affected" by such will, then the proviso cre-
ates no embarrassment or difficulty, or limits the power of
the wife, in devising her estate to her husband.

A proviso, in these or words of similar import, may be

48 *

often found annexed to legislative acts conferring new powers, and when thus used, it is with reference to previously existing rights, and not to those arising under the new power itself. It will be seen, by an examination of our statutes, that the forms of expression, " shall not affect," " shall not interfere with," " shall not impair," are perfectly synonymous when used by the legislature as provisoes or conditions to grants of powers or rights. An examination of the statutes will satisfy any inquirer of the truth of this proposition. Take the statutes of the year 1846, and a very considerable number will be found, that will illustrate and establish this position, that a proviso, " that the rights and interests of A. B. shall not be affected thereby," is most obviously used as synonymous with " impaired." See statutes of 1846, *c.* 73, 80, 102, 105, 140.

I cannot doubt, that the words in the proviso of the statute of 1842, *c.* 74, " that the rights and interests of the husband shall in no way be affected thereby," are to be taken to be precisely equivalent to saying that the rights and interests of the husband " shall not be impaired thereby." It would, in my opinion, be entirely erroneous to give the words " shall in no way be affected thereby " any more extensive application in the present case, than the words " shall not be impaired thereby " would require ; and in either form the proviso has no reference to rights and interests of the husband to be acquired by him under the will itself.

If this reading of the statute is correct, the will is a legal will, and must be allowed and established. If the words of the proviso are only equivalent to " shall not be impaired thereby," it is impossible to make it a restriction upon the capacity of the wife to make a valid devise in favor of her husband. Such a devise cannot, by any possibility, " impair the rights and interests " of the husband. Nor can I have less doubt, that a reasonable construction of this proviso will limit it to other rights and interests than those arising under the will itself.

But it is further contended by the appellant, that if the construction just stated could be authorized, if we were only to consider the language of the first proviso, yet the further

proviso, " nor shall any such will be valid unless such hus-
band, if of sound mind and competent to act, shall give his
assent thereto, expressed in writing and indorsed thereon,"
can only be explained upon the hypothesis, that the authority
given by this statute to a feme covert to make a will was solely
the power to devise to other persons than her husband.   It is
said, that it would be absurd for the legislature to require, as
a condition precedent to the validity of the will, that the
husband should assent to and approve it, by indorsing
such approval on the will as is required by this proviso, if
the devise was to the husband himself, or could be legally
made to him.   But it is to be remembered, that many, per-
haps a large majority of the cases, may be those where the
devise is wholly to others; again there are other wills, where
the husband may be a devisee, and yet to a comparatively
small amount with other devisees.   It may have been deemed
that in all such cases, that supervision of the husband,
which would result from requiring his indorsement upon
the will, would operate to secure more effectually the wife
from improper influences over her in the disposition of her
estate.   Such a provision might be thought proper and well
adapted to a large majority of the cases of wills of femes
covert, and being so might have been introduced generally,
and without making any exception in the case of the devise
being wholly to the husband.

Granting, however, that some consideration is due to this
line of argument, and the inference that is said to arise from
the second proviso, requiring the husband to indorse his ap-
proval of the will before it can have effect, yet the weight of
the argument is in my view more than overcome by the fur-
ther proviso introduced into this act, giving the wife full
power to revoke her will without the assent of her husband.
For what class of cases was this provision made ?   If the
statute had restrained the wife from making her husband the
object of her bounty, even in the smallest degree ; if no will
could be made by her favorable to him ; if no case could ex-
ist where he had an interest in perpetuating her will, (as upon
the assumption that he could not be a devisee under the will

there could not); it would seem to be very useless, not to say strange, to have introduced this third proviso, by which she is authorized to revoke her will without the assent of her husband. This last proviso must have been introduced to secure the free agency of the wife, in revoking a will she has made in favor of her husband. His interest being adverse to a revocation of a will made in his favor, the proviso was necessary to secure the wife fully in the right to make her will.

But if in no possible case his future interests or rights could be affected by the will, as is contended by those who deny the authority of the wife to devise to her husband, then this proviso was quite unnecessary. His assent would of course be given to an instrument of revocation of a will devising her property to others, or where the revocation could not affect his interest prejudicially. This right, thus directly reserved to a feme covert, to revoke her will without the assent of her husband, in my view, therefore, strongly confirms the idea, that the husband may have an interest in the will, which would induce him to refuse his assent to a revocation of such will; or, in other words, that he may be a devisee of his wife.

We come back again to the principal question, that is, whether the statute of 1842, *c.* 74, confers upon a married woman a power to devise her separate property to all persons; or is it a power to devise to every body else but her husband, excluding him entirely, under all circumstances, from being made the object of her beneficence? Such a restriction, so unnatural, is only to be established by a clear and manifest expression of the legislative will. If found in this statute, it is in the first proviso. I have already shown, that the words of limitation there used are merely synonymous with "shall not impair," taking these words as found in many other statutes; and I can give no greater or more extended meaning to them.

In the construction of a statute, the paramount object is to give effect to the legislative will. This is a remedial statute, and is, upon every principle, to be construed liberally. The existing evil was a general incapacity in a feme covert

to make a will of her separate property.   The statute comes
to relieve that general incapacity, to enable her to devise her
separate property, and to devise it, as other testators do, to any
person whom she may select as the object of her bounty.   It
was especially needed in reference to a devise to the husband,
as otherwise a conveyance to a trustee by a husband and wife
would be required, if she would pass the property to him.   I
see no necessity for giving this statute that narrow construc-
tion, which will deprive the wife of the power of bestowing
any part of her estate upon her husband by devise, however
needy he may be, and though she may have no other relative
who has claims on her bounty.

   In every view, it is much better that the wife should have the
power to devise her estate to her husband, than to be obliged to
resort to that circuitous mode, which all acknowledge to be
legal, a conveyance by deed to a third person, her husband join-
ing in the deed, and such third person then executing a con-
veyance of the estate to the husband alone.   Her estate thus
conveyed is gone from her forever, but when given by devise,
is always under her control and liable to be revoked at her
pleasure.   In every view, which I can take of this subject, I
am confirmed in the opinion, that the statute of 1842, *c.* 74,
was intended to remove the general incapacity of a wife to
make a devise of her separate estate, and that by it she
is vested with capacity to make a devise to any person, her
husband included, conforming of course to the forms pre-
scribed by the statute.

   In coming to this result, we only return to the ancient
common law, as it existed before the statute of Richard.   We
only adopt the familiar principle of the civil law; we only
perpetuate this symmetry in the law as to the capacity or in-
capacity of a feme covert to make a will being general and not
.imited, and without any distinction whatever in capacity to
devise to her husband or to other persons; a doctrine which
has prevailed under all systems, whether the civil law, the
ancient common law, or the common law modified by the
English statutes.

   The distinction, now proposed to be introduced, is a novel

and an unreasonable restraint upon the power to devise, and only to be adopted where the obvious language of the statute requires it, and I do not think the statute in question of that character. The practical importance of the construction of the statute, giving the larger power to devise, is becoming every day more and more felt, from the great facilities conferred on married women, for acquiring and holding separate property, by our recent course of legislation. Holding to a great extent, as they now may, all the estate they acquire by gift, or devise, to their own separate use, it would at least indicate a defective system of law, if a married woman could, under no circumstances, devise any portion of her property to her husband. I adopt no such construction of this statute, but am of the opinion, that the will of Roxa M. Thompson, devising her separate real estate to her husband, was a valid will, and as such ought to be approved.

WILDE, J. I concur in the opinion, that the will was well authorized by the statute. *Decree reversed.*

Since the above decision was made, the legislature, by *St.* 1850, *c.* 200, has enabled married women to devise and bequeath their separate estates to their husbands.